987 So.2d 103 (2008)
LaJeffery REEVES, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-4393.
District Court of Appeal of Florida, Fifth District.
June 13, 2008.
Rehearing Denied July 31, 2008.
*105 James S. Purdy, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
LaJeffery Reeves appeals the judgment and sentences arising out of his conviction by jury of three counts of arson of a dwelling, two counts of burglary with an assault or battery, and one count of burglary. Mr. Reeves asks that we reverse the judgment because of certain mental health and self-representation issues that he contends were mishandled by the trial court. We disagree and affirm in all respects.
Mr. Reeves first contends that the trial court erred in finding that he was competent to proceed to trial. When Mr. Reeves was first brought before the court, the trial judge ordered him to be examined as to his competence to proceed to trial, as well as his sanity at the time of the commission of each alleged offense. When two mental health professionals initially agreed that he was not competent to proceed to trial, the trial court committed him to the Florida State Hospital in the custody of the Florida Department of Children and Families. Several months later the hospital found Mr. Reeves to be competent, and concluded essentially that he was malingering. He was then transferred back to the county jail for trial.
Mr. Reeves was reexamined by the same two mental health professionals, but this time one opined that he was still not competent to proceed to trial, while the other felt that he was. The trial court then appointed a third expert to examine him. The third expert concluded that Mr. Reeves was indeed competent to proceed to trial, provided he was represented by counsel. The expert conceded, however, that his conclusion regarding self-representation was not one of the delineated factors generally employed to evaluate competence for purposes of trial.
The trial court heard the testimony of each of the experts, considered their reports, and the report from the state hospital, and found that Mr. Reeves was competent to stand trial. When we consider this issue using an abuse of discretion standard, we cannot agree with Mr. Reeves that the trial court erred. See Alston v. State, 894 So.2d 46, 54 (Fla.2004).
In determining whether an accused is competent to stand trial, the trial court must decide whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree *106 of rational understanding  and whether he has a rational as well as a factual understanding of the proceedings against him." Hardy v. State, 716 So.2d 761, 764 (Fla. 1998) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)); see also § 916.12(1), Fla. Stat. (1993); Fla. R.Crim. P. 3.211(a)(1). If there is conflicting expert testimony concerning the competency of an accused, it is the trial court's responsibility to consider all the evidence relevant to competency and to resolve the factual dispute. See Hunter v. State, 660 So.2d 244, 247 (Fla. 1995); Watts v. State, 593 So.2d 198, 202 (Fla.1992), cert. denied, 505 U.S. 1210, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992).
In the present case one expert believed that Mr. Reeves was suffering from a substance abuse problem and was malingering. That expert agreed with the state hospital that Mr. Reeves was competent to proceed to trial. The second expert found that Mr. Reeves was a paranoid schizophrenic and not competent for trial. Finally, the third expert determined that although Mr. Reeves suffered from a delusional disorder, he was competent to stand trial provided he had the assistance of counsel. As there was sufficient evidence to support the conclusion reached by the judge who heard and considered the evidence presented in this connection, it would, of course, be inappropriate for us to substitute our judgment for that of the trial court. See Alston, Hardy.
Mr. Reeves next argues that the trial court erred in permitting him to discharge his appointed counsel and to proceed to trial representing himself. Once again, we disagree.
Two years before trial, Mr. Reeves wrote a letter to the trial judge asking for his attorney to be discharged and for permission to represent himself at trial. The trial court considered this letter to be an unequivocal request to proceed pro se, and conducted an extensive Faretta[1] hearing attended by Mr. Reeves, his appointed counsel and the prosecutor. The trial judge not only followed the model colloquy provided in rule 3.111, Florida Rules of Criminal Procedure,[2] she also asked numerous questions tailored to Mr. Reeves' specific case. Among other things, Mr. Reeves indicated at the hearing that he was not taking any medications, and that he had never been diagnosed with or treated for a mental illness prior to the time that he was examined for the instant case. The trial court asked him if he had been treated for any reason by any of the psychiatrists at the jail after he had been determined to be competent, and he indicated that he had not. When the court asked Reeves if he was currently housed with the general population, he acknowledged that he was, and had been since he returned from the state hospital.
In addition, the trial court allowed his appointed counsel to question him. In response to an offer by his counsel to provide him with discovery, Mr. Reeves responded, "You know, I'm fully aware about what can happen ... during the outcome or whatever. You know, I would be satisfied, whatever with the outcome. But, you know, I thank you and  no thanks."
The court then reviewed the report of the mental health expert who opined that Mr. Reeves should not be permitted to represent himself, and said:

*107 [J]ust to refresh my recollection of what [the Doctor's] opinion was and, what he says in here is that Mr. Reeves would not receive a fair trial if he represents himself, essentially, because he lacks the knowledge of the Rules of Procedure necessary for the introduction of evidence. But Faretta, obviously, doesn't require that he know the Rules of Procedure in order to represent himself.
So based upon the testimony that I've heard from Mr. Reeves today, I do find that he's competent to waive his right to counsel and he will represent himself in this action. I find that his waiver is knowing and intelligent, having considered and taken into account, the history of the evaluations in this case.
As a precaution, however, and over the objection of Mr. Reeves, the trial court designated his appointed counsel as standby counsel.
On four occasions prior to trial the trial court re-advised Mr. Reeves of his right to counsel, and offered to appoint counsel for him if he desired. On each occasion, Mr. Reeves declined. On the morning of trial the court conducted yet another Faretta hearing, and the court once more found that he was competent to waive his right to counsel, and that his waiver was knowing and intelligent. Finally, on the evening after the first day of trial the court once more offered to appoint counsel for him, and allowed him to reflect on the offer over night. The next morning Mr. Reeves acknowledged that he had conferred with standby counsel in the interim, but again opted to represent himself.
Mr. Reeves now contends that he could not have knowingly and intelligently waived his right to counsel, as he had not received any treatment or medication for his psychiatric disorder. Moreover, he argues that the trial court abused its discretion by allowing him to proceed pro se for the same reasons he should have been declared incompetent to proceed to trial. Finally, he argues that the Faretta inquiry was inadequate as its "inquiry did not dispel these obvious limitations [his incompetence to choose to proceed pro se and the fact that he was not medicated] on the Appellant's ability to make a knowing and voluntary waiver of defense counsel." (Emphasis in original).
In Faretta, the United States Supreme Court recognized that "the Sixth Amendment grants to each criminal defendant the right of self-representation, regardless of consequences." State v. Bowen, 698 So.2d 248, 250 (Fla.1997), cert. denied, 522 U.S. 1081, 118 S.Ct. 865, 139 L.Ed.2d 763 (1998); see also Fla. R.Crim. P. 3.111(d). Once a defendant specifically requests permission to represent himself, the trial court is required to determine whether the defendant is, in fact, capable of making a knowing waiver of his right to counsel. See Bowen, 698 So.2d at 250-51; see also Hill v. State, 688 So.2d 901, 904-05 (Fla.1996), cert. denied, 522 U.S. 907, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997). In order to protect an accused, trial courts are also required to make the person "aware of the dangers and disadvantages of self-representation, so that the record will establish that [the defendant] knows what he is doing and that his choice is made with his eyes open." Hernandez-Alberto v. State, 889 So.2d 721, 729 (Fla. 2004) (quoting Faretta, 422 U.S. at 835, 95 S.Ct. 2525); see also Lamarca v. State, 931 So.2d 838, 855 (Fla.2006). The trial court, however, may not deny the request of a defendant to represent himself or herself simply because he or she does not appear to be sufficiently intelligent or schooled in the procedures of the courtroom for effective self-representation. See Moore v. State, 820 So.2d 442, 443 (Fla. 5th DCA 2002).
*108 In determining whether an accused has knowingly and intelligently waived his right to counsel, a trial court should inquire into, among other things: the defendant's age, mental status, and lack of knowledge and experience in criminal proceedings. Holland v. State, 773 So.2d 1065, 1069 (Fla.2000), cert. denied, 534 U.S. 834, 122 S.Ct. 83, 151 L.Ed.2d 46 (2001) (citing Johnston v. State, 497 So.2d 863, 868 (Fla.1986)); see also Keene v. State, 420 So.2d 908 (Fla. 1st DCA 1982), review denied, 430 So.2d 452 (Fla.1983).[3] In the instant case the trial court on a number of occasions conducted detailed Faretta hearings consistent with the requirements prescribed by the Florida Supreme Court. Additionally, the trial court tailored its inquiry by adding questions relevant to the circumstances surrounding Mr. Reeves' case. There was unquestionably evidence before the court, although disputed, that Mr. Reeves was malingering. In addition, the trial court had the benefit of personally observing his responses to its detailed inquiries. Mr. Reeves made it clear to the assistant public defender who was representing him that he was well aware of the consequences of his actions, and was prepared to accept whatever outcome might result. As a reasonable person could unquestionably find on this record that Mr. Reeves knowingly and intelligently waived his right to counsel, there was no abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).
Finally, Mr. Reeves contends that the trial court abused its discretion in granting a motion in limine filed by the State to exclude the presentation by the defense of any insanity or mental health defense. We review a trial court's ruling in limine using an abuse of discretion standard. Thornton v. State, 767 So.2d 1286, 1288 (Fla. 5th DCA 2000).
Because Mr. Reeves failed to comply with the rule that requires the filing of a notice of intent to rely on a mental health defense not constituting legal insanity not later than thirty days prior to trial, the State moved in limine to prevent the assertion of such a defense at trial. See Fla. R.Crim. P. 3.216(e). Mr. Reeves acknowledged receiving the motion, and told the court that he understood it, but that he was going to present his case based on his faith. The court accordingly granted the motion and explained to the accused that he would not be allowed to argue mental health or insanity issues at trial.
After jury selection, however, Mr. Reeves first advised the court that he now wanted to object to the State's motion. He had still not filed the necessary notice, and when asked why he had not done so, told the court:
Yes. I remember when the last lawyer was representing me and she asked me that question, which she said was my decision, should she  you know what I'm saying  use the insanity defense.... And I was unsure because, you know, I believe in the Lord and I do not want  you know what I'm saying  lose my faith in him.... But at the same time, I don't know what's  what the outcome is going to be.... So now I'm losing my options that....
The trial court noted Mr. Reeves' objection for the record, but affirmed its previous ruling based on the absence of notice.
It is clear that Mr. Reeves never filed the requisite notice; never requested that his trial be continued so that he could file *109 the necessary notice; and never actually tried to insert his mental health status into the proceeding. In fact, he never unequivocally asserted a desire to rely on a mental health defense at all. He indicated only that he did not want to lose his "options."
Perhaps it would have been a good strategy to try to persuade the jury that his purportedly faulty mental health affected his actions. Perhaps it was a mistake for Mr. Reeves to elect self-representation. As the Faretta court observed, however,
The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."
See Faretta, 422 U.S. at 834, n. 46, 95 S.Ct. 2525. Mr. Reeves was aware of the motion in limine and acknowledged his understanding of it four months prior to trial, yet took no action to comply with the rule. We find no abuse of discretion on the part of the trial judge.
As the appellant has failed to demonstrate any error, we affirm the judgment and sentence in all respects.
AFFIRMED.
GRIFFIN and LAWSON, JJ., concur.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] See Amendment to Florida Rule of Criminal Procedure 3.111(d)(2)-(3), 719 So.2d 873, Appendix B (Fla.1998).
[3] Receded from on different grounds in Hughes v. State, 701 So.2d 378, 379 (Fla. 1st DCA 1997).