# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

ELLIOT SHAWN BUTLER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-3034

_____

November 29, 2023

Appeal from the Circuit Court for Pinellas County; Philip J. Federico, Judge.

Howard L. Dimmig, II, Public Defender, and Jean Marie Henne, Special Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and James A. Hellickson, Assistant Attorney General, Tampa, for Appellee.

LaROSE, Judge.

Elliot Shawn Butler appeals his judgment and sentence for robbery. *See* § 812.13(1), (2)(c), Fla. Stat. (2018). We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). Mr. Butler raises two issues: (1) whether the trial court erred by conducting a *Nelson*[1] hearing outside his presence; and (2) whether the trial court failed to conduct a proper

---

[1] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

*Faretta*[2] inquiry into his ability to make an intelligent and knowing waiver of counsel. We find no merit as to both issues.

## I.    <u>Background</u>

On an early morning in late October 2018, a man walked into a Sunoco gas station and asked the clerk for a carton of cigarettes. The clerk went to the back of the station to retrieve the product. When the clerk returned, the man demanded that the clerk hand over all the cigarettes. The clerk complied; the man took the cigarettes and drove off. The clerk memorized the man's license plate and later identified Mr. Butler as the culprit.

The State charged Mr. Butler with robbery. When defense counsel[3] announced that he was ready for trial, Mr. Butler complained that counsel never discussed the details of the case with him. The trial court held a *Nelson* hearing. Mr. Butler testified that counsel failed to adequately use the money he paid for an investigator. Mr. Butler also alleged that counsel failed to locate three witnesses who could support his theory that the clerk gave him the cigarettes in exchange for drugs. Mr. Butler also repeated that counsel had not discussed the case with him. At counsel's request, the trial court continued the trial so counsel and Mr. Butler could confer.

Trial began the next day. At the end of the first day, after the jury left the courtroom, the trial court admonished Mr. Butler to stop disrupting the courtroom, arguing with counsel while the microphone

---

[2] *Faretta v. California*, 422 U.S. 806 (1975).

[3] Several attorneys represented Mr. Butler throughout the trial proceedings, but the same one represented him during the proceedings pertinent to this opinion.

was on, interrupting counsel, and diverting attention away from the jury. The trial court explained that Mr. Butler could discuss matters with his counsel outside the jury's presence. The trial court noted that the jury had been sworn and counsel had to decide what questions to ask the witnesses. The trial court also stated that Mr. Butler did not have to be satisfied with counsel, but counsel's strategy would either work in his favor or Mr. Butler can dispute the strategy in a later proceeding.

Mr. Butler said he understood. But he then complained that counsel failed to impeach the clerk with alleged prior inconsistent statements. The trial court remarked that counsel did so. Mr. Butler asserted that there were more inconsistent statements to address. The trial court explained that counsel may make strategic decisions on when and how to impeach a witness.

Mr. Butler retorted, "Your Honor, you saw my attorney. He didn't even speak properly. He held up everything. He paused for minutes at a time. He was not prepared. He is not prepared to represent me, your Honor." As the trial court began to respond, Mr. Butler interrupted, claiming he felt prejudiced. Counsel started to talk, and the trial court told counsel and Mr. Butler to be quiet. Mr. Butler continued to state that counsel did not question the clerk thoroughly. Counsel disagreed. The trial court adjourned the proceedings, stating it would address the matter the following morning.

But Mr. Butler continued, asserting that there was "something mentally wrong" with counsel, "[h]e's lazy," and cannot argue motions. The trial court repeated that they were "done for tonight." It ordered Mr. Butler to leave the courtroom. He left, stating that "I feel great prejudice, man. It's not justice. . . . There's something mentally wrong with [counsel]. You saw that."

3

The trial court then questioned counsel, "just for the record," about his qualifications. Counsel had been a lawyer since 2008. He had been on the list of court-appointed lawyers since about 2013. Counsel had conducted some seventeen jury trials, including serious felonies. Counsel stated that he was not currently suffering from any "physical or mental difficulties," except for his hip. Counsel stated that he was trying to do what Mr. Butler wanted yet "trying to balance" what he thought was best and important for the defense.

When trial resumed the next day, Mr. Butler asked to cross-examine the witnesses himself; counsel could "sit back and guide [him]." The trial court inquired further if Mr. Butler wanted to represent himself. Mr. Butler responded, "At this time, yes."

The trial court explained that if he wanted to represent himself, it needed to question him about his background and experience and explain the dangers of self-representation. The trial court observed: "The problem for you is, if you [represent yourself], you lose -- you likely will lose your right to challenge your lawyer's appropriateness of his representation because if you're your own lawyer, you can't complain about the lawyer because you're not a lawyer, right?" Mr. Butler asked if he could raise ineffectiveness of counsel if he represented himself. The trial court explained that self-representation would complicate Mr. Butler's ability to raise such a postconviction claim. But the trial court did not give a "definitive answer [whether he could pursue an ineffective assistance claim] because every case is different."

Mr. Butler had continued concerns with his counsel's efforts. "My dilemma is my attorney is having trouble formulating his sentences to even explain things to the jury, you know. And so much [sic] things is

4

[sic] going untouched that should be brought forth to the jury so they can understand."  The trial court cautioned Mr. Butler:

> Well, then that's something eventually that you, if you get convicted, . . . then you will have an opportunity in a separate forum, if it gets to that point, to raise those issues. If you want to take over self-representation now, then, like I said, the balance of the trial is conducted by you.  You don't get to blame your attorney for anything you do from this point forward.  So it's your call.  I mean, there's more questions I have got to ask you but—
>
> . . . .
>
> . . . I'm not guaranteeing you either way.  I'm just telling you that you are complicating the issue of a 3.850 down the road if you self-represent.
>
> . . . .
>
> . . . I'm not trying to get you to go one way or another although I always tell clients who are not lawyers you're at a disadvantage if you represent yourself but –

Mr. Butler replied, "Okay.  I want to withdraw that and let [counsel] do his thing."  The trial continued with counsel representing Mr. Butler until the end.  The jury convicted Mr. Butler, and the trial court sentenced him to prison.

## II.  Discussion

### 1.  *Nelson* Hearing

Mr. Butler argues that the trial court denied him due process by conducting a *Nelson* hearing in his absence.  The State contends that (1) Mr. Butler's general and equivocal allegations were insufficient to trigger a *Nelson* hearing and (2) a request for a *Nelson* hearing during the trial is untimely.

We "review[] a trial court's conduct regarding a *Nelson* inquiry or hearing under an abuse of discretion standard."  *Holland v. State*, 308 So. 3d 1038, 1041 (Fla. 4th DCA 2020).  We review an alleged violation of

5

the right to be present at a crucial stage of a criminal proceeding for harmless error. *Sims v. State*, 135 So. 3d 1098, 1101 (Fla. 2d DCA 2013).

"A defendant has a right to be present at [all crucial] stages [of the trial] where his absence might frustrate the fairness of the proceedings." *Id.* at 1100 (citing *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). A *Nelson* hearing, where the trial court assesses counsel's competence, is such a crucial stage of the proceeding. *See id.* at 1101. Although a better course may have been for the trial court to question counsel with Mr. Butler present, we cannot conclude that the trial court violated any of Mr. Butler's rights.

"A *Nelson* hearing is required only when the defendant makes a 'clear and unequivocal' statement [before the commencement of trial] that he wishes to discharge appointed counsel, the discharge request is based on a claim of incompetence, and the alleged ineffectiveness arises from counsel's current representation." *Laramee v. State*, 90 So. 3d 341, 344 (Fla. 5th DCA 2012) (quoting *Blanding v. State*, 939 So. 2d 173, 175 (Fla. 1st DCA 2006)); *see also Nelson v. State*, 274 So. 2d 256, 258 (Fla. 4th DCA 1973) ("[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge."). "A trial judge's inquiry into a defendant's complaints of incompetence of counsel can be only as specific and meaningful as the defendant's complaint." *Davila v. State*, 829 So. 2d 995, 996 (Fla. 3d DCA 2002) (citing *Lowe v. State*, 650 So. 2d 969, 975 (Fla. 1994)).

6

Here, Mr. Butler generally complained that there was "something" mentally wrong with counsel, that counsel was "lazy," and that he felt prejudiced. Read in context, Mr. Butler's complaints centered on counsel's alleged failure to fully impeach the clerk's testimony. Mr. Butler did not ask to dismiss counsel. Indeed, when Mr. Butler returned for the second trial day, he requested only that counsel remain on standby while he questioned the witnesses, including the clerk. Mr. Butler's comments amounted to general dissatisfaction with counsel's trial preparation, witness development, and trial strategy.

We conclude that Mr. Butler did not make an unequivocal request to discharge counsel, so he did not trigger the need for a Nelson inquiry. Therefore, the trial court's discussion with counsel without Mr. Butler present was not error as he was not entitled to a hearing. *See Morrison v. State*, 818 So. 2d 432, 440-41 (Fla. 2002) (explaining that dissatisfaction with counsel's trial preparation, trial strategy, witness development, and contact with the defendant are not clear allegations of incompetency); *see also McLean v. State*, 29 So. 3d 1045, 1050 (Fla. 2010) ("No error occurred when McLean could not hear a portion of the *Nelson* hearing proceedings because McLean was not entitled to a *Nelson* hearing on the issue being discussed.").

Even if Mr. Butler advanced complaints sufficient to require a *Nelson* hearing, a request to discharge counsel is untimely after the trial begins. *See Holland*, 308 So. 3d at 1041 ("Because '[t]he rule in *Nelson* was designed as a prophylactic measure to prevent a trial from commencing—not to abort a trial already in progress'—a request to discharge counsel is untimely after trial has already begun." (alteration in original) (quoting *Haugabook v. State*, 689 So. 2d 1245, 1246 (Fla. 4th DCA 1997))); *e.g., Dukes v. State*, 503 So. 2d 455, 456 (Fla. 2d DCA

7

1987) (holding that a *Nelson* inquiry was not required where the defendant requested to discharge counsel after the trial began); *Dunston v. State*, 890 So. 2d 483, 484-85 (Fla. 5th DCA 2004) (holding that a *Nelson* hearing was not required because "Dunston did not make his request before the commencement of the trial").  Moreover, Mr. Butler's request did not renew his pretrial complaints about counsel.  *Cf. Hardwick v. State*, 521 So. 2d 1071, 1074 (Fla. 1988) (reviewing the adequacy of a *Nelson* inquiry where "the request was made before trial began and renewed by Hardwick during the trial"), *superseded on other grounds as stated in Hooks v. State*, 286 So. 3d 163, 169 (Fla. 2019).  The trial court conducted a *Nelson* hearing for Mr. Butler's pretrial complaints.  Mr. Butler does not allege error regarding that pretrial *Nelson* hearing.

**2.    *Faretta* Hearing**

Mr. Butler argues that the trial court failed to conduct a proper *Faretta* inquiry when it focused on the preservation of Mr. Butler's postconviction rights.  Mr. Butler maintains that the trial court should have keyed its inquiry on Mr. Butler's ability to waive his right to counsel.

The record reflects that the trial court conducted a *Faretta* hearing when Mr. Butler asked to represent himself.  We review the trial court's handling of that request for an abuse of discretion.  *See McCray v. State*, 71 So. 3d 848, 864 (Fla. 2011).

"[A]n adequate *Faretta* inquiry requires ensuring that the defendant knowingly and intelligently waives his right to counsel."  *Vega v. State*, 57 So. 3d 259, 262 (Fla. 5th DCA 2011).  "This requires advising the 'defendant of the disadvantages and dangers of self-representation.' "  *Id.* (quoting Fla. R. Crim. P. 3.111(d)(2)).  For example, the trial court may

8

warn the defendant: "[I]f you are convicted, you cannot claim on appeal that your own *lack of legal knowledge or skill constitutes a basis for a new trial. In other words, you cannot claim that you received ineffective assistance of counsel.*" *Amend. to Fla. Rule of Crim. Proc. 3.111(d)(2)-(3)*, 719 So. 2d 873, 877 (Fla. 1998).

Mr. Butler asserts that the trial court offered strategic advice "outside the scope of a proper *Faretta* inquiry." More specifically, Mr. Butler argues that the trial court "essentially informed [him] that his counsel was so ineffective that his best litigation strategy was to preserve his right to allege ineffective assistance of trial counsel in a future proceeding." Not so.

Contrary to Mr. Butler's assertion, the trial court did not find counsel to be ineffective. Nor did it instruct Mr. Butler on his "best litigation strategy." Rather, the trial court explained the dangers of self-representation and that "the problem" for Mr. Butler was that, if he represented himself, he could not complain about the lawyer's—who would be him—ineffectiveness. The trial court clearly stated, "If you want to take over self-representation now, then, like I said, the balance of the trial is conducted by you. You don't get to blame your attorney for anything you do from this point forward." The trial court also stated clearly that it was not trying to make Mr. Butler choose to either represent himself or continue with counsel. We conclude that the trial court acted within its discretion when it warned Mr. Butler that self-representation could prejudice his postconviction claims, if any. *See Amend. to Fla. Rule of Crim. Proc. 3.111(d)(2)-(3)*, 719 So. 2d at 877; *Vega*, 57 So. 3d at 262.

We also conclude that the trial court did not need to complete the *Faretta* inquiry. Mr. Butler agreed to counsel's continued representation

9

and abandoned his request to represent himself. *See Cheney v. State*, 236 So. 3d 500, 502 (Fla. 1st DCA 2018) (holding that "Cheney abandoned his then-pending request to represent himself" where he "unequivocally told the judge that he was willing to allow defense counsel to continue to represent him" during the *Faretta* inquiry). The trial court's *Faretta* inquiry was sufficient under the circumstances. *See id.* at 503 ("[T]he trial court did not err by failing to conduct a complete *Faretta* inquiry because Cheney abandoned his request to represent himself when he expressly agreed to allow his court-appointed counsel to continue to represent him."); *Brown v. State*, 45 So. 3d 110, 117 (Fla. 1st DCA 2010) (holding that the trial court erred in failing to allow the defendant to change his mind concerning self-representation).

### III.  Conclusion

The trial court did not err in questioning counsel about his qualifications without Mr. Butler present. Mr. Butler was not entitled to a *Nelson* inquiry based on his general dissatisfaction with counsel's trial preparation and strategy. The trial court also acted within its discretion when warning Mr. Butler about the dangers of self-representation. The *Faretta* inquiry was sufficient. Thus, we affirm Mr. Butler's judgment and sentence.

Affirmed.

KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

10